IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| MICHAEL SHERIDAN, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV-05-412-S-BLW |
| | ) | |
| v. | ) | **MEMORANDUM ORDER** |
| | ) | |
| JEFF CONWAY, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Pending before the Court in this habeas corpus action are various motions filed by the parties that are ripe for adjudication.  Having reviewed the parties' filings, as well as the record in this case, the Court has concluded that oral argument would not aid its decision-making in this case.  Accordingly, the Court enters the following Order.

## PRELIMINARY MOTIONS

Petitioner has filed four "Motions for Leave to File" (Docket Nos. 51, 53, 59, 63). These Motions request leave to file other motions, and are unnecessary.  Therefore, the Court finds them moot.

Petitioner has filed a Motion to Appoint Counsel (Docket No. 52).  There is no constitutional right to counsel in a habeas corpus action.  *Coleman v. Thompson,* 501 U.S. 722, 755 (1991).  A habeas petitioner has a right to counsel, as provided by rule, if an

MEMORANDUM ORDER  1

evidentiary hearing is required in his case.  *See* Rule 8(c) of the Rules Governing Section

2254 Cases.  In addition, the Court may exercise its discretion to appoint counsel for an

indigent petitioner in any case where required by the interests of justice.  28 U.S.C. §

2254(h); 18 U.S.C. § 3006A(a)(2)(B).  Whether counsel should be appointed turns on

Petitioner's ability to articulate his claims in light of the complexity of the legal issues

and his likelihood of success on the merits.  *See Weygandt v. Look*, 718 F.2d 952, 954

(9th Cir. 1983).

The Court finds that Petitioner has done an adequate job briefing the issues in this

case, and that there is not a high likelihood of succeeding on the merits of the claims.  The

Court further finds that appointment of counsel would not serve to further illuminate the

issues in this case.  Therefore, the request for appointment of counsel is denied.

Petitioner has filed a Motion to Take Judicial Notice (Docket No. 54).  Petitioner's

Motion shall be denied, because rather than seeking to have the Court take notice of the

existence and contents of relevant state court records, his motion consists of arguments on

how to construe those records.   For example, Petitioner argues that Respondent

"conceded bad faith destruction of exculpatory evidence by its statement that crime scene

notes were discarded after the police report was typed."  Argument is not the proper

subject of a motion to take judicial notice.  *See* Fed. R. Evid. 201. (court may take judicial

notice of facts "not be subject to reasonable dispute").

MEMORANDUM ORDER  2

Petitioner also wishes to file a personal Affidavit (Docket No. 63). This Affidavit is argument, rather than a verified statement of facts. Therefore, the Motion for Leave to File the Affidavit is granted in part, and the Court will consider it as argument, only.

## BACKGROUND

On July 19, 1997, Petitioner shot and killed Chris Niendorf in Drummond, Idaho. Petitioner was first tried on murder, manslaughter, and aggravated assault charges in the Idaho State District Court in Fremont County. On January 30, 1999, a jury returned a verdict of guilty on the voluntary manslaughter and aggravated assault charges. Later, Judge Brent J. Moss granted Petitioner's motion for a new trial based upon jurors' reports that the bailiff had made improper comments about the case to them during deliberations. The Court granted Petitioner's motion to prevent retrial of the murder charge on double jeopardy grounds.

Petitioner's new trial was held in Bonneville County. A jury convicted him of voluntary manslaughter with the use of a firearm on March 27, 2000. He was acquitted of the aggravated assault charge. He received a sentence of 15 years fixed, with 10 years indeterminate. His direct appeal concluded on November 22, 2002, when the Idaho Supreme Court denied his petition for review.

Petitioner filed a federal habeas corpus action in 2003, which was voluntarily dismissed for failure to exhaust state court remedies. *See Sheridan v. Conway*, CV-03–0030-S-EJL. He subsequently filed a post-conviction action and a state petition for writ of habeas corpus. Those actions are now completed.

MEMORANDUM ORDER  3

Petitioner brought three claims, with various subparts, in his current Habeas Corpus Petition: double jeopardy, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel.  The following claims have been dismissed or denied by the Court based upon the parties' earlier motions: Claims 1, 2(a), 2(b), 3(a), 3(b) 3(d), 3(e), 3(f), 3(h), and 3(i).  *See Order of May 17, 2006* (Docket No. 24).  The claims remaining are as follows:

> 2(c)    ineffective assistance of trial counsel for failing to raise a *Brady* issue regarding crime scene notes and video;
>
> 3(c)    ineffective assistance of appellate counsel for failing to raise on direct appeal a *Brady* issue regarding crime scene notes and video;
>
> 3(g)    ineffective assistance of appellate counsel for failing to raise on direct appeal bad faith destruction of evidence regarding the crime scene notes and video; and
>
> 3(j)    ineffective assistance of appellate counsel for failing to raise on direct appeal a claim of ineffective assistance of trial counsel for failure to obtain a mistrial based on juror misconduct in the second trial.

Respondent has filed a Motion for Summary Judgment, arguing that all four of Petitioner's remaining claims should be denied.  Petitioner has also filed a Motion for Summary Judgment, arguing that he is entitled to relief.  The Court now reviews the parties' arguments.

MEMORANDUM ORDER  4

## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

**A.    Standard of Law**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure.  Rule 11, Rules Governing Section 2254 Cases.  Accordingly, summary judgment motions are appropriate in habeas corpus proceedings where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977).

Petitioner's case was filed after April 24, 1996, making it subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  In order to obtain federal habeas corpus relief from a state court judgment under AEDPA, the petitioner must show that the state court's adjudication of the merits of his federal claim either:

>    1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>    2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

MEMORANDUM ORDER  5

In *Williams v. Taylor*, 529 U.S. 362, 385 (2000), the United States Supreme Court explained that, to prevail under § 2254(d)(1), a petitioner must show that the state court was "wrong as a matter of law," in that it "applie[d] a legal rule that contradicts our prior holdings" or that it "reache[d] a different result from one of our cases despite confronting indistinguishable facts." *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000) (citing *Williams v. Taylor*). Or, a petitioner can prevail by showing that the state court was "[objectively] unreasonable in applying the governing legal principle to the facts of the case," or "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled," *Ramdass v. Angelone*, 530 U.S. at 166 (citing *Williams v. Taylor*); however, a petitioner cannot prevail under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411.

Under AEDPA, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2).

**B.     Discussion of Claim 2(c), 3(c), and 3(g): Ineffective Assistance of Trial Counsel for Failing to Raise a *Brady* Issue Regarding Crime Scene Notes and Video;**

MEMORANDUM ORDER  6

**Ineffective Assistance of Appellate Counsel for Failing to Raise on Direct Appeal a *Brady* Issue Regarding Crime Scene Notes and Video; and Ineffective Assistance of Appellate Counsel for Failing to Raise on Direct Appeal Bad Faith Destruction of Evidence Regarding the Crime Scene Notes and Video**

A criminal defendant has a constitutional right to the assistance of counsel under the Sixth Amendment, made applicable to the states by the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335 (1963).  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established the proper test to be applied to claims alleging constitutionally inadequate representation.  To succeed on such a claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and that (2) the petitioner was prejudiced thereby.  *Id*. at 684.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight.  *Id*. at 689.  The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *Id*.  The pertinent inquiry "is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable."  *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998).

To prevail on an ineffective assistance of counsel claim on appeal, a petitioner must show that his attorney failed to raise an issue obvious from the trial record that probably

MEMORANDUM ORDER  7

would have resulted in reversal.  *See Miller v. Keeney*, 882 F.2d 1428, 1434 n.9 (9th Cir. 1989).  If a petitioner does not show that an attorney's act or omission probably would have resulted in reversal, then he cannot satisfy either prong of *Strickland*: appellate counsel was not ineffective for failing to raise such an issue, and petitioner suffered no prejudice as a result of it not having been raised.  *See Miller*, 882 F.2d at 1435.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  In *United States v. Bagley*, 473 U.S. 667, 676 (1985), the Supreme Court clarified that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id.* at 682.  In other words, a "'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  *Id.*

On post-conviction review, Petitioner alleged that trial counsel's failure to discover or obtain concealed, discarded, or destroyed evidence, particularly crime scene notes and a crime scene video tape, constituted ineffective assistance.  The state district court rejected this claim.  On appeal, the Idaho Court of Appeals determined:

> The district court granted the state's motion for summary dismissal of this allegation, explaining that the claim was conclusory, *i.e.*, without any foundation based upon admissible facts from personal observation of such evidence, no showing of deficient performance by appellate counsel, and no showing that Sheridan would have prevailed on appeal had such an issue

been raised. . . .   Sheridan's *Brady* claim failed to raise a genuine issue of material fact because he failed to include a factual showing through admissible evidence that the alleged crime scene notes and crime scene videotape were (1) exculpatory or impeaching; (2) actually suppressed by the state, and (3) caused prejudice.

*State's Exhibit D-4*, at pp. 4-5.

The evidence in the state court record is as follows.  Fremont County Sheriff's Office Chief Deputy Butch Thomas testified: "I did not wait or acquire the video before processing the scene."  *State's Exhibit A-15*, at pp. 1445-46.  Petitioner produced no evidence during state court proceedings, and has produced none here, demonstrating that a video tape of the crime scene was ever made.  Chief Deputy Thomas testified that he discarded the handwritten crime scene notes when he prepared his final typewritten report. *State's Exhibit A-15.*   The State produced all photographs that were taken of the crime scene.  *See State's Supplemental Lodging* (Docket No. 39).

Because Petitioner has no evidence that a crime scene video ever existed, the Court presumes that the state court's factual findings are correct.  As a result, the state court's decision that no *Brady* violation occurred regarding the alleged video is not contrary to or an unreasonable application of federal law, nor is it based on an unreasonable determination of the facts.

Unlike with the video allegation, the evidence shows that crime scene notes existed, but that they were destroyed when the final police report was prepared.  In *Arizona v. Youngblood*, 488 U.S. 51 (1988), the Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence

MEMORANDUM ORDER  9

does not constitute a denial of due process of law." *Id*. at 58.  Such "potentially useful information" is to be distinguished from "material exculpatory evidence" addressed in *Brady*.  See *Illinois v. Fisher*, 540 U.S. 544, 548 (2004).

Petitioner contends that the victim had two shotguns in his vehicle at the time of the shooting. *Statement of Disputed Facts*, at p. 3 (Docket No. 47-2).  He alleges that the crime scene notes would have shown this fact, and that they were purposely discarded to conceal the presence of two guns.  Deputy Curtis Hillman testified that the body was still in the vehicle when he arrived at the scene, and at that time there was one shotgun in the victim's vehicle. *State's Exhibit A-15*, at pp. 1536 & 1539-45.  Petitioner brings forward no evidence that there were two shotguns in the victim's vehicle at the time of the shooting.  He alleges only that the victim owned two shotguns.  However, that the victim owned two shotguns does not show that he had two shotguns in his vehicle at the time of the shooting.

Based on the evidence in the record, Petitioner has not shown that the crime scene notes contained a notation that there were two guns found in the victim's vehicle.  There is no evidence that anyone saw two guns in the victim's vehicle at or after the time of the shooting.  Thus, Petitioner has not shown that the crime scene notes were materially exculpatory evidence such that *Brady* would apply.  Even if the notes were potentially useful such that *Youngblood* would apply, Petitioner has alleged, but not shown even a hint of evidence that the crime scene notes were destroyed in bad faith, rather than in "good faith and in accordance with their normal practice." *Youngblood*, 488 U.S. at 56.

MEMORANDUM ORDER  10

Because there is no evidence supporting Petitioner's claims, the Court must presume that the state court's findings of fact are correct.  As a result, the state court's decision that no *Brady* or *Youngblood* violation occurred regarding the crime scene notes is not contrary to or an unreasonable application of federal law, nor is it based on an unreasonable determination of the facts.

Finally, because there is no showing of a *Brady* or *Youngblood* violation, Petitioner has not shown that trial counsel or appellate counsel had deficient performance or that such performance prejudiced Petitioner's case.  Petitioner is not entitled to habeas corpus relief on Claims 2(c), 3(c), or 3(g).

**C.**    **Discussion of Claim 3(j): Ineffective Assistance of Appellate Counsel for Failing to Raise on Direct Appeal a Claim of Ineffective Assistance of Trial Counsel for Failure to Obtain a Mistrial Based on Juror Misconduct in the Second Trial**

Petitioner argues that there was jury misconduct in the second trial; particularly, that the jury had considered extraneous information, and that his direct appeal counsel failed to adequately raise the issue on direct appeal.  At the second trial, a witness testified that the victim had pulled a gun on two Fish and Game officers and had been arrested. During deliberations, a juror stated that the Fish and Game charge against the victim had been dismissed.  After the second trial, Petitioner brought a motion for mistrial based upon the affidavits of two jurors and written transcripts of interviews with other jurors, citing the Fish and Game incident and other alleged misconduct.  *State's Exhibit A-12*, pp. 1863-68 & 1877-1958.  The district court held a hearing at which the jury foreman testified, and

then it denied the motion for mistrial.  *Id.*, at pp. 2216-2333; *State's Exhibit A-13*, at pp. 1999-2000.

On direct appeal, Petitioner's counsel specifically contended that the district court erred in considering unsworn statements and transcripts of interviews with jurors in reaching its factual conclusions on juror misconduct and bias.  *State's Exhibit B-4*, at p.7. The Idaho Court of Appeals refused to address the issue because of invited error, finding that Petitioner's own trial counsel had submitted the unsworn juror interview transcripts and had urged the judge to use them in his determination.  *See State's Exhibit B-4*, at pp. 7-8.

Petitioner raised the ineffective assistance of appellate counsel claim in his post-conviction proceedings.  The state district court rejected this claim by written decision. *State's Exhibit C-1*, at p. 230.  Petitioner also raised this claim in his appellate brief. *State's Exhibit D-1*, at p. 23.  The Idaho Court of Appeals did not address the issue, but had the opportunity to do so.  Petitioner raised the claim again in his petition for review. *State's Exhibit D-6*, at pp. 5 & 7.  As a result, the Court previously concluded that Petitioner had properly exhausted this claim.  *See Order of May 17, 2006*, at pp. 10-11 (Docket No. 24).

When the highest state court does not address a petitioner's claim, the federal habeas court analyzes the last reasoned state judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991).  Here, the last reasoned state judgment is the state district court's decision on post-conviction review:

MEMORANDUM ORDER  12

> In Sheridan's second trial, one of the jurors was seen speaking with prosecution witnesses, read [sic] the newspapers during deliberation. Sheridan alleges that this information improperly influenced the juror. Ms. Luebbert did in fact raise this issue on appeal. However, Sheridan alleges that it was raised in an ineffective manner.
>
> The Idaho Court of Appeals ruled that the issue would not be considered due to invited error. Having reviewed Ms. Luebbert's opening and reply briefs it appears to this Court that she properly argued that issue. The fact that the Court of Appeals did not agree with her argument, cannot be assigned as ineffectiveness on her part.

*State's Exhibit C-1*, p. 230.  Although the state district court did not specifically reference the Fish and Game incident in its opinion, it is clear that it is assessing all of the juror misconduct claims that Ms. Luebbert, Petitioner's appellate counsel, brought in her briefing, and the Fish and Game incident was prominently presented there.  In order to obtain habeas corpus relief, Petitioner must show that this decision is contrary to, or an unreasonable application of *Strickland v. Washington, supra*, or that the decision is based on an unreasonable determination of the facts.

To review Petitioner's claim, the Court starts with the record that Ms. Luebbert had to work with when she developed her direct appeal strategy.  Key to her analysis was the ruling made by the state trial court on the issue of whether a mistrial should have been declared as a result of extraneous information brought before the jury, particularly, the allegation that Juror Coombs told other jurors that the victim's Fish and Game violation had been dismissed.

The standard governing the trial court's decision was Idaho Rule of Evidence 606(b), which provides:

MEMORANDUM ORDER  13

Inquiry to validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror and may be questioned about or may execute an affidavit on the issue of whether or not the jury determined any issue by resort to chance.

The state trial court reasoned as follows in its order when it denied Petitioner's

motion for a mistrial:

> The Court held the standard for review is found in Idaho Rule of Evidence 606(b).  As applicable to this case, that standard is whether extraneous information was given to the jurors, and whether such information could have reasonably prejudiced the verdict.  The Court may not consider "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental processes. . . ." Further, the court could not consider transcripts of juror's interviews since they were not properly before the court.

> The Court having considered all the allegations of the defendant regarding extraneous information, whether submitted in the motion, affidavits, or oral argument, there is no basis to believe any of that information could reasonably have produced prejudice whether viewed individually or collectively.  The applicable standard as set by *Reynolds v. State*, 126 Idaho 24, 878 P.2d 198 (Ct. App. 1994), and *Roll v. City of Middleton*, 115 Idaho 833, 771 P.2d 54 (Ct. App. 1989), has not been met.  Accordingly, the Verdict reached was proper and defendant's motion is denied.

*State's Exhibit A-13*, at pp. 1999-2000.


MEMORANDUM ORDER  14

The case law cited by the state trial court includes the following legal principles. Jurors' testimony regarding deliberations is generally excluded because "the proper standard is whether prejudice reasonably could have occurred, rather than whether prejudice actually occurred." *Roll v. City of Middleton*, 771 P.2d 54, 58 (Idaho Ct. App. 1989).  In other words, "[b]ecause jurors cannot be questioned as to whether they were in fact prejudiced by extraneous information, the trial judge must determine whether the information reasonably could have produced prejudice, when evaluated in light of all the events and the evidence at trial." *Id*.  In its evaluation, the Court should give "due regard . . to the policy of assuring that jury verdicts are based upon the evidence at trial, not upon extraneous information or improper influences." *Id*. at 60.

Here, the extraneous information brought before the jury includes the following: (1) that Petitioner was 50 years old because it was reported in the newspaper; (2) that one juror's wife knew he was a "male alternate juror" because it was reported in the newspaper; and (3) that Juror Coombs stated that the case against the victim for assaulting Fish and Game officers had been "thrown out," because the officers were parents of some of his students.[1]   That Petitioner was 50 years old and that one juror was the male

---

[1]  There was also an allegation that Juror Coombs had conversed with two rebuttal witnesses.  The judge had questioned the juror and determined that they had been discussing elk hunting, not the trial. *State's Exhibit A-16*, pp. 2267 & 2330-31. Another juror thought he heard Coombs say, "yes, they used to have a really good team," to the rebuttal witnesses.  By all accounts, Coombs and the witnesses were not talking about the trial.  There is no evidence that, as a result of this conversation, "extraneous prejudicial information was improperly brought to the jury's attention" or "any outside influence was improperly brought to bear upon any juror." *See* Id. R. Evid. 606(b).

MEMORANDUM ORDER  15

alternate juror were pieces of information that could not have reasonably produced

prejudice in light of all of the other evidence presented at trial.  The Fish and Game officer

information is more relevant because it related to evidence proffered at trial.

At the hearing on the motion for mistrial, Jury Foreman Tim Leininger testified as

follows:

> Q:   In your statement, you indicated: "At this point I had already
> decided to bring these incidents to the attention of the defense
> or the court in hope of a declared mistrial."  Help me
> understand further what you mean by that.  What were you -- I
> know you have listed a number of things, but what were you
> bringing to the Court's attention in your mind?  Just in general
> terms, what were you bringing to the Court's attention?
>
> A.   The extra information.  I have a strong perception that the
> extra information that was brought in did sway some people,
> including myself, because I was the last holdout.  And when
> logic failed, I gave in to things like, well, maybe he did see
> those bullets hit; maybe he heard them; maybe people don't
> like Chris Niendorf, and they're just painting him that way,
> you know, being that the Fish and Game incident was thrown
> out. And I thought if it's swaying me, it had -- it might be
> affecting others.  And I didn't think it was right.  I wanted to
> see a deliberation on testimony and evidence and not whether
> somebody was drinking or whether they did or did not have a
> gun and how the bullets entered.  I didn't want that in the
> deliberation, and I tried and tried to fight it.
>
> Q.   Mr. Leininger, do you believe that the verdict was reached, at
> least in part, on items that were not part of the evidence and
> instructions given?
>
> A.   Being that it swayed my vote, I would have to say yes.
>
> Q.   I don't have anything else at this point.

MEMORANDUM ORDER  16

Court:     Is there anything specifically that you think caused you to change your view that you think is extraneous.

A.     What won me over at the end was Ron and Mike kept pushing that he had to have -- that Mike Sheridan had to have known that he hit Niendorf; when you're standing at close range to somebody and you fire a .45 caliber, that you either see how the shots impact or hear them.  And I don't necessarily agree with that.

*State's Exhibit A-16*, pp. 2262-63.

As soon as Jury Foreman Leininger began discussing how he thought the extraneous information affected his deliberations and other jurors' deliberations, he was venturing into grounds not permitted by Rule 606(b).  It is also clear that he had an incorrect view of what was "extraneous information" was; for example, "whether somebody was drinking or whether they did or did not have a gun and how the bullets entered" were, in fact, pieces of evidence properly admitted at trial.   Indeed, what "won [him] over in the end," was not extraneous information at all; jurors are "permitted to draw from the facts which [they] find have been proved such reasonable inferences as [they] feel are justified in the light of [their] experience and common sense."  *Grotmeyer v. Hickman*, 393 F.3d 871, 879 (9th Cir. 2004).  The transcripts of the other jurors' interviews, also considered by the judge but not permitted by Rule 606(b), tend to support the judge's conclusion that the jurors did not hear the statement, remember the statement, or discuss the Fish and Game incident disposition in their deliberations.

MEMORANDUM ORDER  17

After the hearing on the motion for a mistrial, the trial court determined as follows

regarding the alleged statement Juror Coombs made about the disposition of the victim's

Fish and Game incident:

> Although I have determined that the transcribed statement of Mr.
> Coombs is not admissible because it's hearsay, certainly if it were
> considered to be evidence, he adamantly denies it, as I recall, that that
> statement was made.

> But irrespective of that -- and I should add, too, in looking at the other
> affidavits -- or, excuse me, the transcribed statements of the other jurors that
> are in the file, even though they're hearsay, certainly there's nothing in those
> statements that suggests, first, as I recall, that any such statement was ever
> made and, secondly, whether anybody every made anything up, or even
> considered it, or even discussed it.

> So, considering all of the information and the evidence that I have
> before me, it appears to me that even if such a statement was made, in
> substance, to the effect that Mr. Coombs knew that the case against Mr.
> Niendorf, if there was one, was thrown out, it doesn't seem to me that there
> is any basis for arguing that the extraneous information reasonably produced
> prejudice or could have reasonably produced prejudice in this case,
> particularly as to the jurors' verdict.

> I've considered the other matters that Mr. Hart argues.  And he in
> general mentioned all the bits and pieces of extraneous information Mr.
> Leininger seems to refer to in his affidavit and Mr. Leninger's conclusory
> statement, about in his view the verdict was reached in part on improper
> information being submitted to the jury.  I can't see, considering those bits
> and pieces individually or collectively, that they could have reasonably
> produced prejudice in this case.

*State's Exhibit A-16*, pp. 2331-33.

The extraneous information about the Fish and Game incident must be viewed in

light of all of the evidence presented to the jury.  At issue was whether Petitioner had acted

in self-defense in shooting the victim.  At trial, Petitioner called witnesses Don

MEMORANDUM ORDER  18

Harshbarger and Michelle Janes to testify that the victim had a reputation of being

belligerent, violent, obnoxious, combative and aggressive with others, and easily provoked

to anger.  *State's Exhibit A-16*, at pp. 1637-1651.  Witness Charles Kuehlwind testified

similarly, and he also testified that Petitioner knew of the Fish & Game incident:

> I explained to Mike Sheridan [Petitioner] that Chris Niendorf [the victim] swung a gun in the direction of the Game officers, and they told him to put it down, and he didn't do it.  And I was afraid he was going to be shot. I told him to put it down before they shot him.

*State's Exhibit A-16*, at p. 1677.

A summary of the eyewitness evidence presented at trial is as follows:

> At trial, the state presented the testimony of two eyewitnesses to the crime.  The jury heard the testimony of Twyla Niendorf that Sheridan pulled in front of the Niendorfs' van, jumped out and began shooting.  Twyla testified that Sheridan fired twice, then repositioned himself and fired three more times into the slumped body of Chris Niendorf.  The jury saw the videotaped deposition testimony from the other eyewitness, Cal Brower,[2] who described seeing Sheridan pull up in front of the Niendorfs' van, exit his truck, and fire his gun into the windshield.  Brower turned away so that he did not see Sheridan fire all five shots, but heard two shots in rapid succession, then three more after a brief pause.  The jury also heard testimony from police investigators that the shotgun in the Niendorfs' van was on the floor, underneath Chris' body in such a position that it was unlikely Chris had been holding it.

*State's Exhibit B-4*, pp. 6-7.

The two eyewitnesses corroborated each other with their testimony about the

incident.  The testimony goes straight to the elements of the crime and the elements of

self-defense, unlike the tangential issue of whether the victim's Fish and Game case was

---

[2]  Cal Brower died before the first trial.

MEMORANDUM ORDER  19

dismissed.  As noted above, two other witnesses testified about the victim's reputation in the community for aggression and violence; again, disposition of one incident related to his aggressive and violent reputation in his favor does not outweigh the testimony about his general reputation.  The trial court determined that the disposition of the victim's Fish and Game incident charge was "minor, inconsequential" and "insignificant" information.  *State's Exhibit A-16*, p. 2333.  However, the trial court's determination was based on information that should not have been considered under Rule 606(b).

Upon this record, the state post-conviction court rejected Petitioner's claim that his counsel on direct appeal was ineffective.  By referring to the state court trial and appeal record, the state post-conviction court found that Ms. Luebbert had, in fact, raised the jury misconduct issue on appeal.  *State's Exhibit C-1*, p. 230.  This Court, likewise, agrees that the record of the trial court is sufficient upon which to determine the issue of ineffective assistance of counsel on direct appeal.  *See Schriro v. Landrigan*, 127 S.Ct. 1933, 1940 (U.S. 2007) ("an evidentiary hearing is not required on issues that can be resolved by reference to the state court record.").

Here, appellate counsel did not fail to raise an issue; rather, she chose to raise it in manner different from Petitioner's preferred approach chosen with the benefit of hindsight. It is easy to say after the appellate court has rejected an argument that a different approach should have been used.  *See Strickland*, 466 U.S. at 689 (in assessing whether counsel's representation fell below an objective standard of competence, a reviewing court must

MEMORANDUM ORDER  20

view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight).  *Id*. at 689.

Here, counsel had to choose among two not especially promising arguments.  It was reasonable to make the argument she did and believe that because the trial judge *clearly* erred in considering items contrary to Rule of Evidence 606(b), the Court of Appeals might have found that egregious enough to overlook the potential "invited error" problem. Importantly, Petitioner cannot show that had counsel simply argued that the trial judge made the wrong decision or presented this argument in the alternative, it probably would have resulted in reversal.  *See Miller*, 882 F.2d at 1435.  Ms. Luebbert had to work with a trial court record where the hearing had not produced conclusive evidence that the statement was even made, and the trial court had concluded that even if the statement had been made, it was not discussed by jurors.  This Court agrees that the alleged Fish and Game incident disposition information is insignificant in light of all of the evidence in the record and could not reasonably have produced prejudice.

As a result of the foregoing, the Court concludes that Petitioner has shown neither deficient performance of his appellate counsel nor prejudice to his case.  The state court opinion rejecting Petitioner's ineffective assistance of counsel claim is not contrary to, or an unreasonable application of *Strickland*, nor was the opinion based on an unreasonable determination of the facts in the state court record.  As a result, Petitioner is not entitled to federal habeas corpus relief.

**D.    Instructions for Appeal**

MEMORANDUM ORDER  21

Before a petitioner may appeal from the dismissal of a 28 U.S.C. § 2254 petition, he must first obtain a certificate of appealability by filing a request for a certificate of appealability with the federal district court.  28 U.S.C. § 2253(c).  Until a certificate of appealability has been issued, an appellate court lacks jurisdiction to rule on the merits of an appeal.  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).   A federal district court will not issue a certificate of appealability absent "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner satisfies this standard by demonstrating that reasonable jurists would find debatable both the merits of the constitutional claims and any dispositive procedural rulings by the district court.  *Miller-El v. Cockrell*, 537 at 336 (2003).

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's "Motions for Leave to File" (Docket Nos. 51, 53, 59, 63) are MOOT.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion to Appoint Counsel (Docket No. 52) is DENIED.

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion to Take Judicial Notice (Docket No. 54) is DENIED.

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion for Summary Judgment (Docket No. 60) is DENIED.

IT IS FURTHER HEREBY ORDERED that Petitioner's Motion to File Affidavit (Docket No. 63) is GRANTED in part, to the extent set forth above.

MEMORANDUM ORDER  22

IT IS FURTHER HEREBY ORDERED that Respondent's Motion for Summary

Judgment (Docket No. 43) is GRANTED. Petitioner's Petition is DISMISSED with

prejudice.



DATED:  **September 10, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge

MEMORANDUM ORDER  23